The opinion of the court was delivered by
Carpeípfer, J.
With every disposition to carry out the intention of the testator in favor of the widow, in relation to the carriage, so far as it can be done consistently with the rules of law, yet in the present case it is difficult to see how the intended gift can take effect, in accordance with those rules. Established rules are of vastly more importance titan the hardship of any particular case. I am of the opinion that the intended gift cannot take effect as a donatio mortis causa, no delivery having been made of the article by the testator. The case of Spratly v. Wilson, 1 Holt. N. P. Cas. 10, seems something like the present. The testator, on his death bed, desired B. to call at a certain place, and fetch away a watch, adding that he would make her a present of it; but no possession was resumed by the testator and no delivery made to B., the watch remaining at its place of deposit with a silversmith, until after the death of the' testator. Although this was not held to bean absolute gift, yet Gibbs G. J., before whom the cause was tried, seemed to hold it good as a donatio mortis causa. This ease from Holt’s Reports was subsequently cited in the Court of Common Pleas, but was disclaimed and overruled. When cited, Gibbs G. J. immediately desired that it should be laid out of consideration; adding that the doctrine then broached had been improvidently thrown out, and that that case could not be supported because delivery was wanting. See Bunn v. Markham, 7 Taunt. 224. Delivery is essential to such gift; there was none in the present case, either symbolical or actual. Indeed it would seem incapable of delivery, and consequently of being the subject of such gift, as the article was in the process of manufacture, and the risk remained in the maker until subsequently delivered. As I understand the evidence taken before the Orphans’ Court, the article was, after the death of the testator, delivered to the executor, he paid the maker the balance of the price still due him ; and by his assent, it then went into the hands of the widow. I feel constrained to say that the executor was bound to account for its value, and that the decree is in this particular erroneous.
Neither do I aprehend the allowance of the item of $933, paid by the executor to Allen Rogers, as guardian or trustee of the plaintiffs, to be correct. The trust, in the fourteenth item of *598 the will, was only in relation to property, “ devised and bequeathed as aforesaid.” In terms it only applied to the previous clauses of the will, in which certain devises and bequests had been given ; and it cannot, by implication, be extended to subsequent provisions in a codicil, executed several years after-wards. The last codicil, in 1840 expressly revokes the provisions made for these plaintiffs in the 13th item of the will, and then in lieu thereof makes an increased and different bequest. In this latter and new provision, no reference is made to the trust directed in the will, which, expressly restricted in terms to particular and specified subjects, when the subject matter failed, has necessarily failed also. The executor having paid this money in his own wrong, should not be allowed therefor. In this particular the decree of the Orphans’ Court is likewise erroneous and should be corrected.
Nevius, J.
Upon the state of facts presented to this court, I think the Orphans’ Court was right in refusing to charge the defendant with the value of the carriage. Although it was not in the actual possession of the testator in his life time, yet, by virtue of his contract with the builder and the payment of the purchase money in part, he had acquired such an interest in it, that he could legally dispose of it, by sale, by gift, or by will. Did he then make such a disposition of it, in his life time, as will legally discharge the defendant from liability to account for it? A man in his last illness, and apprehensive of death, may by gift dispose of any article of his personal property, to be kept by his donee, in the event of his death, and such gift is called a donatio mortis eausa, and a wife is as capable of being such donee as any one else. But it is said that it is necessary to the validity of such gift, that it should be accompanied with actual delivery. 1 admit there must be a delivery, to make such gift effectual; but it need not always be an actual delivery, or transfer of the possession of the thing given, into the hands of the donee. If it be a delivery consistent with the nature and situation, or condition of the property, and the only kind of delivery of which the property is susceptible at the time, it will be sufficient. In this case there could be no actual transfer into the hands of the wife, for *599 the carriage was yet in the hands of the builder, in an unfinished state. If a man go as far as he can in such case towards transferring the possession, his bounty shall prevail. Tol. on Ex. 233. Here eould be no symbolical delivery, nor a delivery of part in the name of the whole, nor a transfer by the delivery of a key of a coach or warehouse. The most that the testator could have done to carry out his intention, would have been to send for the builder, and in the presence of a witness, make the gift and direct him to make the delivery to his wife in case of his death, as soon as the property could be delivered. This I apprehend would have been within the spirit of the rule, that requires delivery of such a gift. And what he did was equivalent t® this. He verbally made the gift, correspondent with the clause of his codicil, above referred to, and instructed his executor, (the man who after his death he had entrusted with the settlement of his estate), to execute and carry it out. What he said to the defendant, was in the nature of a declaration of trust, which I think he was bound both in law and equity to perform ; and whether the property, after the testator’s death, came directly into the hands of his widow, or of the defendant, will not in my opinion affect her rights, or his liability. If he received it, he was bound to deliver it to her in the execution of his trust. Assuming then that the testator had such an interest in the carriage, in virtue of his contract with the builder, and the payment of part of the purchase money on that contract, as would warrant his disposing of it by sale, gift or will, I think he exercised that power in a lawful and effectual way, and made a legal and valid gift by way of donatio mortis oausa. If he could do so at all, he could do it in the way in which it was done. But even if, according to the strict and stern rules of law, this gift could not be sustained, I am nevertheless of opinion that the defendant ought not to have been charged by the court below, with the value of this property. The evidence shows, that he acted in no bad faith, but with that reason and discretion which would have led any intelligent and conscientious mind to the same result. If he made a mistake according to a strict construction of the law, it was a natural one, for which he ought not to be held accountable opon a final settlement of his accounts. 2 John. Cases 376. *600 Though generally speaking, an executor, compounding or releasing a debt, must answer for the same, yet if he does so for the benefit of the estate, it will be an excuse. 3 Pe. Wms. 381, This shows that the courts, to which the executor is to respond for the faithful performance of his trust, have the power to save him from the operation of a strict legal principle, which would be attended, if the plaintiffs’ position is true, with the most glaring injustice. But I apprehend no principle of law is violated, or even strained in the conclusion, at which I have arrived in the present case.
As to the second exception, taken to the decree of the Orphans’ Court, to wit, the allowance to the defendant, of the sum of f 933 paid to Allen Rogers, I think the court committed no error. By the 13th section of his will, the testator directs his executor to sell all the rest and residue of his estate ; and after payment of his debts and legacies, he gives the proceeds of said sales and all moneys due to him, to his six grand-sons, to be equally divided between them ; “ that is to say, first set off to and pay Joseph Rogers, Theodore W. Rogers, William R. Roberts, Joseph E. Roberts, and Nathan S. Roberts, .$3500 each, in order to make them equal with Allen Rogers for the land heretofore devised to him, and the residue to be equally divided between them, subject nevertheless to the guardianship and trust, as hereinafter directed.” And in the same clause of his will, he orders and directs his executor, to pay to the trustee and guardian, so to be appointed, the said moneys; and then directs the said trustee and guardian to keep said moneys at interest, on good land or other good and sufficient security. ■
By the 14th section of his will, he appoints his nephew Allen Rogers, guardian of all the estate real and personal of his grandsons devised and bequeathed as aforesaid, with an expression of great confidence in his integrity and faithfulness; and directs him not to pay Joseph Rogers’ share to him, till he arrives at the age of 23 years; and then only in case the said Joseph is sober, industrious and careful, and if not so, to pay him the interest only for 'his natural life. In the 17 th section, he directs “ the said Allen Rogers, guardian as aforesaid, to appropriate such parts of the interest arising out of the moneys given to Joseph, Theodore *601 and Allen Rogers to school and educate them, as may be necessary to give them a liberal education, during their minority; and when they arrive at the age of 21 years, to pay to the said Theodore and Allen Rogers, each his share, &c.; also in like manner, to the said William, Joseph and Nathan Rogers.” This will, in part recited, bears date on the 31st of August, 1833, to which are annexed five codicils executed at different times. By the 5th codicil, dated the 1st of June, 1840, he says, “ that, since making his will and the foregoing codicils, ho has thought proper to make some alterations in his will. And whereas my grandsons Theodore and Allen Rogers, have not treated me with the respect due to a grand parent, I revoke the 5th section of my will wherein I bequeathed to my three grandsons, Joseph, Theodore and Allen Rogers my bank stock after the death of their mother, and I order the same to go into the residue of my estate, to be disposed of as hereinafter directed.” Then, after revoking the 6th section of his will, wherein he had devised certain lands to his grandson Allen Rogers ; and devising the same lands to Joseph Rogers, he proceeds, “ I do further revoke, make null and void that part of the 13th item, wherein I bequeathed $3500 to each of my grandsons, viz: Joseph and Theodore Rogers, William, Joseph and Nathan Roberts; and also that part of the said 13th item, wherein I bequeathed the residue of my estate to my said grandsons, (meaning then) share and share alike; and I do hereby give and bequeath to my grandsons, Theodore and Allen Rogers, the sum of $2000 each provided they execute such release to my executor, as is directed in the 15th section of my will; and further, I revoke that part of the 14th item, wherein I have directed my grandson Joseph Rogers’ share to be paid to Allen Rogers my nephew, for Joseph’s benefit; and I order the same to be paid to Joseph himself, provided,” &a., (naming a condition.) “And I further give and bequeath all the residue of my estate, not heretofore disposed of, to my four grandsons, Joseph Rogers, William, Joseph and Nathan Roberts, share and share alike.”
It further appears that, after the death of the testator, Allen Rogers, the guardian and trustee named in the will, declared in writing his acceptance of the trust, and executed a bond pursuant to the statute; whereupon letters were granted to him, as such testamentary guardian of Theodore and Allen Rogers and Wil *602 liam, Joseph and Nathan Roberts; and that afterwards upon the petition of William, Joseph and Nathan Roberts to the Chancellor, Izry Roberts their father was appointed their guardian on the 18th of January, 1843.
As far as I can ascertain from the case presented to us, for it is not distinctly stated, I infer that the payment to Allen Rogers, by the defendant, and which is complained of, was made, before, the appointment of Izry Roberts as guardian, by the Chancellor. Upon the foregoing state of facts, the question is fairly presented, whether the defendant was lawfully authorized to make this payment to Allen Rogers. Our statute recognizes the power to appoint a guardian, and also a trustee by last will and testament. Elm. Dig. 225, Id. 600. And if such will be proved and recorded, and the guardian so appointed declare his acceptance of the guardianship, and give bond approved by the Orphans’ Court, he shall execute the office. Such an appointment was made by the will of the testator in this case. The will was proved and recorded, the appointment accepted, and the bond given pursuant to the statute. It is not necessary to inquire into the right of the Orphans’ Court to issue letters of guardianship, nor the validity of those letters. The office of guardian and trustee was created by the will of the testator, and the action of the Orphans’ Court was no further necessary than to approve the bond, which the statute required. These letters, therefore, will in no wise affect the right of Allen Rogers, to the office of guardian and trustee under the will; for his acceptance of them was no evidence of such right. But it is contended, that the appointment, made by the will, was revoked by the codicil above cited. I do not so understand it. By the 13th clause of the will, the testator directed the residue of his estate to be liquidated ; and then gives the proceeds, and all moneys due to him, to his six grandsons, subject to the guardianship and trust after mentioned; and orders his executor to pay such residue to said guardian and trustee, who is enjoined to vest the same at interest, till such time as it shall be payable to his legatees ; and by the next clause appoints his nephew guardian of all the estate so bequeathed, directing him not to pay Joseph’s share till he attain the age of 23 years. By the last clause, he *603 imposes upon his said nephew, guardian as aforesaid, thefurthe duty of appropriating a part of the interest arising out of th moneys so given to three of his grandsons, to give them a liberal education, and when five of them respectively arrive at lawful age, to pay them their legacies. The codicil does not revoke this trust, nor in any wise change the powers and duties of the executor, except as regards the payment of Joseph Rogers’ share. By the will, the executor was to liquidate the estate, and pay it over to the trustee. The codicil does not alter or modify this direction, with the exception above mentioned. The fund to be paid to the guardian is the same, is derived from the same source, raised by the same means, and to be paid by the same person who is named in the will. The codicil only changes the distribution of th'at fund, after it comes to the hands of the guardian and trustee. The testator has not discharged his executor from the duty of liquidating the residue of his estate, and paying it over, with the exception of Joseph’s share, to the guardian ; nor has he discharged the guardian from the duty and trust of investing this fund, at interest on good security, and appropriating a part of the interest towards the education of some his grand children; nor of paying them their respective shares, when they attain lawful age. All these instructions, contained in his will, remain in full force, wholly unrepealed and unaffected by his codicil, By this codicil, the testator in express terms revokes the 5th and 6th sections of his will, that is the whole of these sections, but as to the 13th section he only revokes that part of it, wherein he bequeathed 03500 of the residue of his estate to five of his grandsons, and the balance to his six grandsons, in equal proportions; and instead of this, gives to Theodore and Allen Rogers 02000 each, leaving the remaining part of this section of his will in full force. And so he revokes only that part of the 14th clause of his will, wherein he had directed his nephew to pay his grandson Joseph his share, when he attained the age of twenty-three years, and directed the same to be paid to himself and not to the guardian ; and then gives the residue of his estate to his four grandsons, Joseph Rogers, William, Joseph and Nathan Roberts, evidently meaning not to interfere with the trust created by that section of his will, farther than to change *604 the direction of his bequests. In this alteration of his will by the codicil of 1840, he makes no reference whatever to the 17th section of it, which also contains instructions to the guardian and trustee. The will and codicil are to be construed together, and every provision contained in them is to prevail, if they can stand together and are not inconsistent with each other; and from a careful examination of the case before us, I cannot preceive even an implied, much less an express revocation of the trust in the will. On the contrary, it is clear to my mind, that the testator intended to leave it in full force, except so far as he altered it by express terms. I find nothing in the codicil to warrant the assumption, that the testator intended to revoke this trust. I think therefore, that the defendant was legally justified in making this payment to Allen Rogers, and that he was lawfully entitled to receive it.
I deem it unnecessary to advert to the appointment of a guardian, by the Chancellor; or to inquire into the validity of that appointment; or whether it divested the testamentary guardian of his rights and powers ; for the money was paid by the defendant to the guardian named in the will, before such appointment was made by the Chancellor; and was therefore rightfully paid, and the decree of the Orphans’ Court ought to be affirmed with costs.
Decree of the Orphans’ Court set aside.
Hornblower C. J. concurred with Carpenter J.
Whitehead , and Randolph J. J. did not hear the argument, and gave no opinion.
Cited in Egerton’s Ex. v. Egerton, 2 C. E. Gr. 421.